USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _6/24/2026____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
NICHOLAS LOEB,

                                        Plaintiff,

-against-

DAN MAHER, SOUTHERN HEALTH INSURANCE,
JOHN AND JANE DOES 1-10, and ABC ENTITIES 1-10,

                                                                    25-cv-3356 (NSR)
                                                                    OPINION & ORDER

                                        Defendants.

-----------------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge:

Plaintiff Nicholas Loeb ("Plaintiff") brings this action against Dan Maher ("Maher"), Southern Health Insurance, John and Jane Does 1-10, and ABC Entities 1-10, asserting claims arising out of Defendants' alleged misrepresentations concerning Plaintiff's health insurance coverage. (*See generally* Compl., ECF No. 1.) Plaintiff asserts claims for negligence, fraud, breach of fiduciary duty, and professional malpractice. (*Id*. ¶¶ 25-44.)

Presently before the Court is Defendants Dan Maher and Dan Maher d/b/a Southern Health Ins. Texas's motion to dismiss. (Dfts. Mot., ECF No. 17.) Defendants move to dismiss the Complaint under Rule 12(b)(1) for failure to satisfy the amount-in-controversy requirement, or, alternatively, to dismiss Plaintiff's fraud claim under Rules 12(b)(6) and 9(b). For the following reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART. Defendants' motion to dismiss for lack of subject matter jurisdiction is DENIED. Defendants' motion to dismiss Plaintiff's fraud claim is GRANTED, and Plaintiff's fraud claim is dismissed without prejudice.

## BACKGROUND

### A. Factual Background

The following facts are derived from the Complaint and are taken as true and construed in the light most favorable to Plaintiff at this stage.

Plaintiff is an individual who resides in Purchase, New York. (Compl. ¶ 1.) Upon information and belief, Defendant Maher is an individual who resides in Florida and is employed by Southern Health Insurance. (*Id*. ¶ 2.) Plaintiff alleges that Southern Health Insurance is a Florida corporation with a principal place of business in Florida, but which conducts substantial business in New York. (*Id*. ¶ 3.)

For many years, Plaintiff had health insurance through Worldwide Insurance Services, LLC d/b/a GeoBlue ("GeoBlue"), under a GeoBlue Xplorer Premium Plan. (*Id*. ¶ 8.) Plaintiff alleges that he was satisfied with his GeoBlue coverage, but that the cost of his GeoBlue plan increased while his fiancée was pregnant and/or trying to get pregnant. (*Id*. ¶¶ 8-9.) Because Plaintiff planned to have more children, he contacted Maher about changing his insurance plan, at least temporarily, to save money during the period of his fiancée's pregnancies. (*Id*. ¶ 10.)

Plaintiff alleges that he had been taking certain prescribed medications for many years, and that those medications were covered by his GeoBlue plan. (*Id*. ¶ 11.) Because Plaintiff's use of those medications was "most likely permanent," Plaintiff explicitly informed Maher of his use of the specific medications and informed Maher that it was imperative that any new plan cover those medications. (*Id*. ¶ 12.) Plaintiff alleges that Maher explicitly promised that he would be able to obtain for Plaintiff a health insurance plan that covered those medications despite Plaintiff's pre-existing condition. (*Id*. ¶ 13.)

Plaintiff also informed Maher that he was undergoing physical therapy, which had been covered by his GeoBlue plan. (*Id*. ¶ 14.) The Complaint states that Plaintiff was "assured that this would not be covered in any new plan presented." (*Id*. ¶ 15.) Plaintiff contends in opposition, however, that the word "not" was a typographical error and that the Complaint should be read to allege that Plaintiff was assured that physical therapy would be covered by any new plan. (Opp. at 3 n.1, ECF No. 19.) Plaintiff further alleges that Maher told him that he could always return to his GeoBlue plan if he did not like the new plan. (Compl. ¶ 16.)

Maher thereafter presented Plaintiff with a Blue Cross/Blue Shield plan (the "BCBS Plan") and allegedly told Plaintiff that all of his medications and physical therapy would be covered. (*Id*. ¶ 17.) Relying on Maher's representations, Plaintiff switched from the GeoBlue plan to the BCBS Plan. (*Id*. ¶ 18.) Plaintiff alleges that the BCBS Plan then declined to cover either his medications or his physical therapy, causing him to incur "thousands of dollars a month in out-of-pocket costs." (*Id*. ¶ 19.) After Plaintiff brought this issue to Maher's attention, Maher allegedly promised to "make it right," but months passed without resolution. (*Id*. ¶¶ 20-21.) Plaintiff alleges that he attempted to return to his former GeoBlue plan but was unable to obtain the same plan he abandoned for the BCBS Plan. (*Id*. ¶ 22.) Plaintiff further alleges that he approached several other brokers and was unable to obtain a plan that covered his medications and physical therapy. (*Id*. ¶ 23.)

Plaintiff asserts four claims: negligence, fraud, breach of fiduciary duty, and professional malpractice. (*Id*. ¶¶ 25-44.) In support of his fraud claim, Plaintiff alleges that he explained his situation and coverage needs to Maher as far back as December 8, 2022, and again in May 2024; that in or about May 2024, Maher made intentional misrepresentations about what would and would not be covered under the BCBS Plan; that Plaintiff relied on those alleged

misrepresentations in changing from the GeoBlue plan to the BCBS Plan; and that Plaintiff lost coverage for thousands of dollars per month in medications and physical therapy, which he will have to continue paying indefinitely. (*Id.* ¶¶ 30-35.)

### B. Procedural History

Plaintiff commenced this action against Defendants on April 23, 2025. (ECF No. 1.) Defendants thereafter filed the instant motion to dismiss and accompanying memorandum of law, seeking dismissal of the Complaint under Rule 12(b)(1) and, in the alternative, dismissal of Plaintiff's fraud claim under Rules 12(b)(6) and 9(b). (Mot. & Mem., ECF No. 17.) Plaintiff opposed the motion. (Opp., ECF No. 19.) Defendants subsequently filed a reply. (Reply, ECF No. 18.)

## LEGAL STANDARD

### A. Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction ... when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (citation and internal quotations omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). In assessing whether there is subject matter jurisdiction, the Court must accept as true all material facts alleged in the complaint, *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009), but "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits ...." *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

4

### B. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### C. Rule 9(b)

While the rules of federal pleading typically require a "short and plain statement," *see* Fed. R. Civ. P. 8, fraud claims have heightened pleading requirements. *See* Fed. R. Civ. P. 9(b). To meet Rule 9(b)'s pleading standard, a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were

made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). "Allegations that are conclusory or unsupported by factual assertions are insufficient." *ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

## DISCUSSION

Defendants move to dismiss on two grounds. First, Defendants argue that the Complaint should be dismissed under Rule 12(b)(1) because Plaintiff has failed to satisfy the amount-in-controversy requirement for diversity jurisdiction. (Mot. at 1.) Second, Defendants argue that, even if the Court has subject matter jurisdiction, Plaintiff's fraud claim should be dismissed under Rules 12(b)(6) and 9(b) for failure to plead fraud with particularity.[1] (*Id.*) The Court addresses Defendants' jurisdictional challenge and fraud arguments in turn.

For the reasons that follow, Defendants' Rule 12(b)(1) motion is DENIED, but Defendants' motion to dismiss Plaintiff's fraud claim is GRANTED without prejudice.

### A. Amount in Controversy

For diversity jurisdiction to exist, the amount in controversy must exceed $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). Although the plaintiff bears the burden of establishing subject matter jurisdiction, that burden is "hardly onerous" because there is "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (internal quotation marks omitted). To overcome that presumption, "it must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."

---

[1] Because Defendants seek merits dismissal only of Plaintiff's fraud claim, the Court does not address the sufficiency of Plaintiff's negligence, breach of fiduciary duty, or professional malpractice claims. (*See generally* FAC ¶¶ 25-28, 36-39, 40-44.)

*Ocean Ships, Inc. v. Stiles,* 315 F.3d 111, 115 (2d Cir. 2002) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)); *see also Chase Manhattan Bank, N.A. v. Am. Nat'l Bank & Trust Co. of Chi.*, 93 F.3d 1064, 1070 (2d Cir. 1996) ("[T]he legal impossibility of recovery must be so certain as virtually to negate the plaintiff's good faith in asserting the claim.").

Applying that standard, Defendants have not overcome the presumption that Plaintiff's amount-in-controversy allegation was made in good faith. Plaintiff alleges that he had been taking costly prescribed medications for many years; that those medications were covered by his GeoBlue Xplorer Premium Plan; that his use of the medications is "most likely permanent"; and that he specifically informed Maher that any new plan needed to cover those medications. (Compl. ¶¶ 11–13.) Plaintiff further alleges that he told Maher he was undergoing physical therapy, which had been covered by his GeoBlue plan, and that Maher represented that the BCBS Plan would cover Plaintiff's medications and physical therapy. (*Id*. ¶¶ 14–18.) According to Plaintiff, after he switched plans in reliance on Maher's representations, the BCBS Plan declined to cover his medications and physical therapy, causing him to incur "thousands of dollars a month in out-of-pocket costs." (*Id*. ¶ 19.) Plaintiff also alleges that he was unable to return to his prior GeoBlue plan and unable to obtain another plan that covered his medications and physical therapy. (*Id*. ¶¶ 22–23.) These allegations are sufficient to provide a good-faith basis to conclude, at this stage, that the amount in controversy exceeds $75,000.

Defendants' contrary calculation does not establish to a legal certainty that Plaintiff's claims fall below the jurisdictional threshold. Defendants contend that Plaintiff previously paid approximately $4,500 per month for his GeoBlue plan, that the BCBS Plan cost approximately $1,800 per month, and that Plaintiff's out-of-pocket medication costs were approximately $1,250 per month. (Mem. at 11–13.) Based on those figures, Defendants argue that Plaintiff did not suffer

7

any net monthly loss because the combined cost of the BCBS premium and Plaintiff's alleged medication expenses was approximately $3,050 per month, about $1,450 less than the prior GeoBlue premium. (*Id.*) Defendants therefore contend that Plaintiff's alleged uncovered medication costs cannot support more than $75,000 in damages. (*Id.*)

But Plaintiff disputes the premise of that calculation: he argues that the GeoBlue premium was temporarily inflated by pregnancy coverage and would have decreased at the next renewal period; that the BCBS Plan failed to cover physical therapy; and that he could not return to his prior plan or obtain comparable replacement coverage. (Opp. at 10–13; Compl. ¶¶ 19, 22–23.) These disputes go to the merits, not jurisdiction; they do not render recovery above $75,000 legally impossible or negate Plaintiff's good faith in asserting the jurisdictional amount.

Nor is this a case where Plaintiff relies only on a conclusory allegation that the amount in controversy is satisfied. A bare allegation that damages exceed $75,000, without more, may be insufficient, but Plaintiff's Complaint alleges specific categories of ongoing damages: uncovered medication and physical therapy costs that Plaintiff claims will continue indefinitely. (Compl. ¶¶ 19, 33.) Because those allegations are not facially implausible and are not shown to have been made in bad faith, Defendants have not satisfied their burden of showing that Plaintiff's recovery is legally certain to fall below $75,000.

Accordingly, Defendants' motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is denied.

### B. Fraud

Defendants move to dismiss Plaintiff's fraud claim under Rules 12(b)(6) and 9(b). To state a claim for fraud under New York law, a plaintiff must allege "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the

intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 687 (S.D.N.Y. 2021) (quoting *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001)). Because fraud is alleged, the claim must also satisfy Rule 9(b)'s heightened pleading standard, which requires a plaintiff to "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) were fraudulent." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015). Although scienter "may be alleged generally," a plaintiff must nonetheless allege facts "that give rise to a strong inference" of the defendant's intent to defraud, established either by alleging facts to show that defendants had both motive and opportunity to commit fraud, or "by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* at 177–78; *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 291 (2d Cir. 2006).

Plaintiff identifies the alleged misrepresentations with enough detail, but he does not adequately plead fraudulent intent. The Complaint identifies Maher as the speaker, places the alleged misrepresentations in or about May 2024, and describes their substance. Specifically, Maher allegedly represented that he could obtain a plan covering Plaintiff's medications despite his pre-existing condition; that the BCBS Plan would cover Plaintiff's medications and physical therapy; and that Plaintiff could return to GeoBlue if he did not like the new plan. (Compl. ¶¶ 13, 16–18, 30–31.)  Plaintiff further alleges reliance and damages, specifically that he switched plans on the strength of those representations and incurred thousands of dollars per month in uncovered expenses when the BCBS Plan declined to cover his medications and physical therapy. (*Id.* ¶¶ 18–19, 32–35.)  Those allegations supply the who, what, when, and substance of the alleged fraud.

What the Complaint does not supply is a factual basis for inferring that Maher knew his representations were false when he made them. The Complaint alleges that Maher made "intentional misrepresentations" (Compl. ¶ 31), but that label is conclusory. Plaintiff does not allege that Maher reviewed plan documents revealing the medication exclusions, possessed information contradicting his statements, or concealed known limitations of the BCBS Plan. The Healthcare Disclosure Plaintiff signed when accepting the plan stated that the plan excluded specialty medications.[2] (D'Amato Decl. Ex. B, ECF No. 17-2.) It also advised applicants taking high-cost medications to consider whether the policy would meet their needs. (*Id*.) Plaintiff does not allege that Maher directed him to disregard that Disclosure, misrepresented its contents, or had any other basis to know the BCBS Plan would fail to cover Plaintiff's specific prescriptions. The subsequent denial of coverage may support Plaintiff's negligence and malpractice theories, but the fact that a plan turned out not to cover what a broker promised does not, without more, permit an inference that the broker knew that when he spoke.

Plaintiff's opposition argues that Maher acted to induce the plan switch for his own financial benefit as a broker. (Opp. at 13–17.) That theory is not in the Complaint. Plaintiff cannot amend through opposition briefing, *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998), and even if the Court were to consider it, a broker's generalized financial interest in placing

---

[2] The Court may consider documents attached to the Complaint, incorporated by reference, or integral to the Complaint. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (recognizing that "in some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint" and explaining that a document is integral where the complaint "relies heavily upon its terms and effect"). Although the Healthcare Disclosure was not attached to the Complaint, it is arguably integral because Plaintiff's claims arise from his acceptance of the BCBS Plan and the alleged scope of that plan's coverage. (Compl. ¶¶ 17–19.) The Disclosure, submitted as Exhibit B to the D'Amato Declaration, identifies the plan type as "5000 Classic-BCBS" and concerns the coverage limitations of that plan. (D'Amato Decl. Ex. B.) In any event, the Court need not decide whether the Disclosure is properly considered at this stage because, even without considering it, the Complaint fails to plead facts giving rise to a strong inference that Maher knew his alleged statements were false when made.

10

a client in a new policy does not establish a strong inference of fraudulent intent. *See Lerner*, 459 F.3d at 290-91.

Accordingly, Plaintiff's fraud claim is dismissed without prejudice.

### C. Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). It is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). In exercising that discretion, courts consider factors including undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility. *See Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, leave to amend is appropriate. Although Plaintiff has failed to adequately plead scienter, the Court cannot conclude at this stage that amendment would necessarily be futile. Plaintiff may be able to allege additional facts regarding Maher's knowledge, the specific circumstances of the alleged statements, and why those statements were fraudulent when made. Nor is there any indication of undue delay, bad faith, repeated failure to cure deficiencies, or undue prejudice to Defendants. Accordingly, Plaintiff's fraud claim is dismissed without prejudice, and Plaintiff is granted leave to amend.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Defendants' motion to dismiss the Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) is DENIED. Defendants' motion to dismiss Plaintiff's fraud claim under Rules 12(b)(6) and 9(b) is GRANTED, and Plaintiff's fraud claim is dismissed without

11

prejudice. Plaintiff's negligence, breach of fiduciary duty, and professional malpractice claims remain pending.

Plaintiff is granted leave to file an Amended Complaint to replead his fraud claim. Plaintiff shall file any Amended Complaint on or before July 17, 2026. Plaintiff is advised that any Amended Complaint will replace, not supplement, the Complaint, and therefore must include all claims and factual allegations Plaintiff wishes to pursue in this action.

Should Plaintiff file an Amended Complaint, Defendants are directed to answer or otherwise respond on or before August 10, 2026. If Plaintiff fails to file an Amended Complaint within the time allowed, and cannot show good cause to excuse such failure, Plaintiff's fraud claim shall be deemed dismissed with prejudice, and Defendants shall answer Plaintiff's remaining claims on or before August 10, 2026

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 17.

Dated: June 24, 2026
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

12